IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 04-cv-01482-WDM

GERRY A. RYCHTARIK,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Plaintiff Gerry A. Rychtarik seeks judicial review of the decision of Defendant, the Commissioner of Social Security (Commissioner), denying his application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-433 and 1381-1383c.  Following review of the record and the parties' written and oral arguments, I affirm the Commissioner's final administrative decision that Rychtarik was not disabled within the meaning of the Act prior to August 14, 2002.

### Procedural History

Rychtarik, who was born in May 1953, alleged he became disabled on April 25, 2000, when he was forty-six years old, because of lack of circulation and numbness in his legs and feet.  Rychtarik completed the tenth grade and worked in the relevant past as an industrial supply and auto parts salesperson.

Rychtarik's applications were denied initially. He requested a hearing before an Administrative Law Judge (ALJ), which was held July 18, 2002. In a decision dated August 23, 2002, the ALJ found that Rychtarik was not disabled within the meaning of the Act.

On the basis of additional medical records dated after the administrative hearing, the ALJ issued a reconsidered decision on September 3, 2002. The ALJ found Rychtarik was disabled within the meaning of the Act as of August 14, 2002, when his left leg was surgically amputated, because he met the requirements of Listing 1.05[1] (amputation, due to any cause). The ALJ found that Rychtarik, prior to August 14, 2002, and despite his severe impairments (peripheral vascular disease, status post aortobifemoral bypass and right knee osteoarthritis), retained the residual functional capacity (RFC) to perform the following limited range of sedentary and light work activities.[2] Specifically, the ALJ found Rychtarik retained the RFC to lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk two to four hours out of an eight hour day and sit two hours at a time for a total of six hours out of an eight hour day, all with regular breaks; occasionally climb ramps and stairs, balance, stoop, kneel on both knees, and crouch. He was not able to work at heights, crawl, kneel on his right knee alone, and climb ladders, ropes, and scaffolding, and he claimant needed to avoid concentrated exposure to extreme

---

[1] The Listings, 20 C.F.R. part 404, subpt. P, app. 1, describe impairments which are considered severe enough to prevent a person from doing any gainful activity. See 20 C.F.R. §§ 404.1525, 416.925.

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Id. at §§ 404.1567(b), 416.967(b).

cold.

The ALJ found that Rychtarik's RFC precluded him from returning to any of his past relevant work prior to August 14, 2002.

Using the Medical-Vocational Guidelines (Grids)[3] as a framework, and based upon the testimony of a vocational expert, the ALJ determined that an individual of Rychtarik's age (forty-nine years old in August 2002); with Rychtarik's education (tenth grade), past relevant work (no transferable skills) and RFC, as assessed, could perform jobs (assembler, food and beverage order clerk, and cashier) that exist in significant numbers. Thus, the ALJ concluded that Rychtarik was not disabled within the meaning of the Act prior to August 14, 2002.

The Appeals Council denied Rychtarik's request for review for review of the ALJ's decision, making it the final administrative decision for purposes of judicial review. This appeal followed.

## Facts

A.     Medical Evidence Before the ALJ

In April and May 2000, Rychtarik was treated for a callus on his right foot, fungal dermatitis, resolving; cellulitis in both legs, resolved; and mechanical foot pain.

On June 27, 2000, Rychtarik reported a three to four month history of problems with his lower extremity, including tender and tingling toes, ankle stiffness, swelling and pain on

---

[3] Absent significant nonexertional limitations, the Grids fulfill the burden of proving the existence of jobs in the national economy that Rychtarik could perform, given his age, education, prior work experience, and RFC; they are essentially a taking of administrative notice and are a valid exercise of the Commissioner's authority. See Heckler v. Campbell, 461 U.S. 458 (1983); 20 C.F.R. §§ 404.1569, 416.969.

the ball of his right foot. Rychtarik was diagnosed with arteriosclerosis, pronounced in the right extremity.

In July 2000, William G. Rainer, Jr., M.D., a specialist in vascular and thoracic surgery who performed a consultative examination, assessed Rychtarik with a non-healing ulceration of the right foot, very likely in the setting of fairly severe peripheral vascular disease. Dr. Rainer prescribed medication, including one baby aspirin a day, and daily walking exercise. He recommended further testing and opined that the next step would be either operative or radiologic intervention to improve inflow to the non-healing ulceration. After further testing, Dr. Rainer's diagnostic impression was "fairly severe aortobi-iliac occlusive disease with nonhealing ulcer."

In August 2000, Rychtarik underwent an angiogram, MRI testing, and an aortogram study which showed that Rychtarik's right common iliac artery was occluded, his left external iliac was occluded, and his left femoral artery had stenosis.

On November 21, 2000, Rychtarik underwent an aortobifemoral bypass. Rychtarik was discharged in stable condition with instructions to lift no more than fifteen pounds for two months. Pain medication (Viocodin) was prescribed, as needed. Rychtarik was advised to take one aspirin daily. Follow-up notes indicated Rychtarik was doing well, his surgical sounds were well-healed, he had good pulses bilaterally and he was walking one mile a day.

On June 8, 2001, Allan Burnside, M.D., performed a consultative physical examination. Rychtarik had full flexion of the back, some limitation on extension, full lateral bending, and equivocal straight leg raising. Dr. Burnside opined that Rychtarik could no

longer work as a truck driver and that Rychtarik had no other job skills or work capacity. Dr. Burnside recommended vocational rehabilitation/retraining. Dr. Burnside opined on a "Med-9" form that Rychtarik's peripheral vascular disease was disabling and that Rychtarik needed vocational rehabilitation to be employable.

In August 2001, Dr. Burnside found Rychtarik had intact pulses, no edema, and was responding to medication. Dr. Burnside believed that the weakness in Rychtarik's legs would improve with time. He recommended a walking program.

A State agency physician who reviewed the medical evidence in November 2001 determined that Rychtarik, despite his impairments, retained the RFC for sedentary and light work activities.

From January through April, 2002, Rychtarik's right knee was edematous with joint effusion. Rychtarik was treated with medication (Vioxx), which reportedly worked well. He was able to fully flex and extend his knee, despite some effusion.

In May 2002, Dr. Burnside opined on a "Med-9" form that Rychtarik's peripheral vascular disease was disabling and that Rychtarik needed vocational rehabilitation to be employable.

On July 10, 2002, Rychtarik had 3+ effusion of the right knee; no significant tenderness to palpation; and was neurovascularly intact, with some crepititus.

After the hearing, Rychtarik submitted the following additional medical evidence, dated August 14-17, 2002: Rychtarik was diagnosed with gangrene in the left leg and an ischemic right leg; and he thereafter underwent two surgeries to amputate both legs above the knees.

B.   <u>Rychtarik's Testimony</u>

Rychtarik testified that he last worked about one year prior to the hearing (through July 2001), performing auto repair in his garage. Rychtarik stated he was in jail from March 1999 to March 2000.

Rychtarik testified he could not work because he could not stand on his feet more than two hours, and if he did so he would need to sit and elevate his feet for at least twenty minutes. Rychtarik stated that his ankles, feet, and calves began to swell after sitting after three to four hours. He stated he could walk at his normal pace for approximately one hundred yards before his legs cramped, but he did "okay" if he walked slower. Rychtarik reported infections in his feet, weakness in both legs, right knee problems, and trouble balancing. He stated he took pain medication (Vioxx) and baby aspirin without significant side effects. He stated Tylenol helped him sleep and reduced his pain. He stated his pain was generally at a level of six to seven on a scale of one to ten, with ten being the worst pain, and that it sometimes increased to level nine. Rychtarik testified that his legs improved after he had surgery in November 2000.

Rychtarik testified he lived with his mother and brother. He stated he could do his laundry, cook, vacuum, drive, shop, and garden. He stated he was "up and down" most of the time. He read magazines and watched television, but he was not used to sitting.

C.   <u>Vocational Expert Testimony</u>

A vocational expert testified that Rychtarik's past relevant work as an auto parts sales person and as an automobile mechanic was semi-skilled and required more than sedentary exertion.

The ALJ asked the vocational expert to assume a hypothetical individual of Rychtarik's age, with Rychtarik's education, work history, and with the RFC described above. The vocational expert responded that the individual could perform unskilled sedentary work such as assembler (Dictionary of Occupational Titles (DOT) No. 713.687-018) and lens inserter (DOT No. 713.687-026); and that 1600 such jobs existed in Colorado; and that 140,000 such jobs existed nationally. The vocational expert testified that the individual could also perform other unskilled, sedentary work such as food order clerk (DOT No. 209.567-014, 1100 jobs in Colorado, 95,000 jobs nationally); gambling or check cashier (DOT No. 211.462-022 and 211.462.026, 4500 jobs in Colorado, over 400,000 jobs nationally).

### Standard of Review

I review the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Doyal v. Barnhart*, 331 F.3d 758, 760(10th Cir. 2003); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, at 760 (citations and internal quotation marks omitted). I "may neither reweigh the evidence nor substitute [my] discretion for . . . the [ALJ's]." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002). In reviewing the decision, I examine the record in its entirety. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Where evidence as a whole can support either the agency's decision or an award of benefits, the agency's

decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## Discussion

To be disabling within the meaning of the Social Security Act (the Act), a claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A)(2),(5) (defining disability within the meaning of the Act); *see also* 20 C.F.R. § 404.1505. The disabling functional limitations, not the impairments alone, must satisfy the durational requirement. *See Barnhart v. Walton*, 535 U.S. 212 (2002). In this case, the administrative finding that Rychtarik was disabled as of August 14, 2002, but not before, was supported by substantial evidence and free of legal error.

Rychtarik claims that the ALJ improperly disregarded a treating physician's opinion that he was unable to work; and that the ALJ did not address a conflict between the vocational expert's testimony and DOT. Rychtarik also raises the general argument that the amputation of his legs supports a finding that he was disabled on or before the date of the July 18, 2002, administrative hearing.

I find that Dr. Burnside's June 2001 and May 2002 opinions -- that Rychtarik was unable to work at any job – were not supported by other evidence of record., including his own treatment notes, the reports of other examining and reviewing medical sources, and Rychtarik's self-reported activities prior to the July 18, 2002, hearing. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (controlling weight is given to treating physician's opinion about the nature and severity of a claimant's impairments, but only if is "well supported by clinical and laboratory diagnostic techniques" and "not inconsistent with other

Case 1:04-cv-01482-WDM   Document 36   Filed 07/15/05   USDC Colorado   Page 9 of 10

substantial evidence" of record).  Further, Dr. Burnside's treatment notes and opinion contemplated Rychtarik ultimately being able to work with vocational rehabilitation.  *See, e.g., Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (a referral to vocational rehabilitation supported an inference that a claimant's problems were not disabling). Moreover, Dr. Burnside's opinions addressed the ultimate issue of disability, which is reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (medical source opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work," are not entitled to "any special significance").  Based upon the record as a whole, I agree with the Commissioner that the ALJ properly considered and discounted Dr. Burnside's opinions.

When determining that Rychtarik, prior to August 14, 2002, could perform work existing in significant numbers, the ALJ properly relied on the vocational expert's response to a question that accurately portrayed Rychtarik's vocational factors.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).  Rychtarik has not demonstrated how any hypothetical question posed to the vocational expert was inconsistent with the DOT.  Thus, I find the administrative decision was based upon a finding that was consistent with the DOT.

As to Rychtarik's common sense argument, he focuses on the July 18, 2002, hearing that was held approximately one month before he underwent surgery to amputate his legs, and urges that he was disabled at least as of that hearing date.  However, the reality is that Rychtarik seeks to go back almost two and one-half years, back into early 2000, and relate the tragedy of the amputation somehow back to that time.  Based upon

the record as I find it, there was no suggestion that Rychtarik was disabled during that time, and I see no justification in the record for arriving at that conclusion.

On the record there is substantial evidence to support the ALJ's decision, and I do not find there to be any legal error.  *See Doyal*, 331 F.3d at 760 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); and *White v. Massanari*, 287 F.3d 905 (a reviewing court "may neither reweigh the evidence nor substitute [its] discretion for that of the [ALJ]."

<u>Conclusion</u>

Substantial evidence supports the final administrative decision that Rychtarik was disabled within the meaning of the Act as of August 14, 2002, but not before.  Because this decision was free of legal error, the decision of the Commissioner is affirmed.

DATED at Denver, Colorado, on July 15, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge